**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| PROTECT DEMOCRACY PROJECT, INC. | ) | |
| 2020 Pennsylvania Avenue NW, #163 | ) | |
| Washington, DC 20006 | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| THE U.S. DEPARTMENT OF JUSTICE | ) | |
| CIVIL RIGHTS DIVISION | ) | |
| 501 D Street NW, Washington, DC 20579 | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# COMPLAINT

1.      The Protect Democracy Project, Inc. ("Plaintiff" or "Protect Democracy") brings this action against the United States Department of Justice Civil Rights Division ("Defendant" or "CRT") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. Plaintiff alleges as follows:

2.      The integrity of the next decennial census, the 2020 Census, goes directly to the heart of public confidence in our government. Any political interference with the leadership, content, or conduct of the Census Bureau or 2020 Census poses a grave risk of corrupting our election process by creating an inaccurate and partisan congressional apportionment base—the population of each state counted in the census and used as the basis for congressional apportionment.

3.      No facts collected by the federal government are more critical to the basic functioning of our democracy than the data collected by the Census Bureau. The census has therefore historically and rightly been conducted on an independent basis by non-political, professional staff and isolated from interference by the White House and other political officials. Any politicization of the most important and complex data collection performed by the federal government would represent a significant threat to the accuracy of the 2020 Census and the independence of an agency that must, for the sake of our democracy, remain nonpartisan.

4.      On March 26, 2018, the Department of Commerce announced its decision to include a question on citizenship in the 2020 Census. *See* U.S. Department of Commerce Announces Reinstatement of Citizenship Question to the 2020 Decennial Census (Mar. 26, 2018), *available at* https://www.commerce.gov/print/3475 ("a question on citizenship status will be reinstated to the 2020 decennial census questionnaire to help enforce the Voting Rights Act

(VRA).  Secretary Ross's decision follows a request by the Department of Justice (DOJ) to add a question on citizenship status to the 2020 decennial census.").  It is stated in the March 26, 2018 memorandum from Secretary Ross concerning the decision that "after a thorough review of the legal, program, and policy considerations, as well as numerous discussions with the Census Bureau leadership and interested stakeholders, I [Secretary Ross] have determined that reinstatement of a citizenship question on the 2020 decennial census is necessary to provide complete and accurate data in response to the DOJ request."  *See* Memorandum by Secretary of Commerce Wilbur Ross Regarding Reinstatement of a Citizenship Question on the 2020 Decennial Census Questionnaire, *available at* https://www.commerce.gov/sites/commerce.gov/files/2018-03-26_2.pdf.

5.      Census experts have made clear that the inclusion of such questions would have a significant negative impact on the accuracy of the 2020 Census. *See, e.g.*, Arloc Sherman, The Center for Budget and Policy Priorities, Census Chief Scientist: Citizenship Question Reduces Accuracy, Raises Costs, *available at* https://www.cbpp.org/blog/census-chief-scientist-citizenship-question-reduces-accuracy-raises-costs; Michael Wines, *Census Bureau's Own Expert Panel Rebukes Decision to Add Citizenship Question*, N.Y. Times (March 30, 2018), *available at* https://www.nytimes.com/2018/03/30/us/census-bureau-citizenship.html; The Leadership Conference Education Fund, Factsheet: Adding a New Citizenship Question to the 2020 Census, *available at* http://civilrightsdocs.info/pdf/census/Census-Citizenship-Question-Fact-Sheet.pdf.

6.      On June 21, 2018, Secretary of Commerce Wilbur Ross issued a supplemental memorandum regarding his March 26, 2018 decision to include a citizenship question in the 2020 Census.  Although the March 26, 2018 memorandum clearly implied that the Department

of Commerce began considering the citizenship question only after the Department of Justice's

December 12, 2017 request to include such a question in the 2020 Census, Secretary Ross

explained in his supplemental memorandum that he and his staff "had various discussions with

other governmental officials" and then "inquired whether the Department of Justice (DOJ) would

support, and if so would request, inclusion of a citizenship question" in the 2020 Census.  *See*

Supplemental Memorandum by Secretary of Commerce Wilbur Ross Regarding the

Administrative Record in Census Litigation, June 21, 2018, *available at*

https://assets.documentcloud.org/documents/4550951/Supplemental-Memo-by-Wilbur-Ross.pdf.

7.      Documents produced publicly by the Department of Commerce suggest its

decision-making process has been influenced not by statistical experts and career Census staff,

but by partisan individuals associated with the Trump campaign. *See, e.g.*, Hansi Lo Wang,

*Trump Officials Say They Can't Recall Discussing Census Citizenship Question*, N.P.R. (Sept. 5,

2018), *available at* https://www.npr.org/2018/09/05/645032482/trump-officials-say-they-cant-

recall-discussing-census-citizenship-question; Katie Benner and Liz Robbins, *Documents Show*

*Political Lobbying in Census Questions About Citizenship*, N.Y. Times (June 9, 2018), *available*

*at* https://www.nytimes.com/2018/06/09/nyregion/kobach-bannon-lobbying-census-question-on-

citizenship-documents.html.

8.      The stakes of an accurate census could not be higher. Anti-democratic regimes

thrive on the obfuscation of truth by those in power, seeking to sow confusion amongst the

public and curry favor through manipulated perception rather than objective fact. They also seek

to skew election results by developing election processes premised on biased or inaccurate

population counts. The American public needs to know whether there has been any inappropriate

interference with this most essential of democratic functions.

## JURISDICTION AND VENUE

9.      This Court has both subject matter jurisdiction and personal jurisdiction over the

parties pursuant to 5 U.S.C. § 552(a)(4)(B). Plaintiff's principal place of business is in

Washington, DC, and the District of Columbia has independent authority to hear FOIA appeals

under 5 U.S.C. § 552(a)(4)(B).

10.     Because Plaintiff's claim arises under federal statutory law, this Court also has

subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11.     Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

12.     Plaintiff, Protect Democracy, is an organization with 501(c)(3) status,

incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania

Avenue NW, #163, Washington, D.C. 20006. Plaintiff's mission is to prevent our democracy

from declining into a more authoritarian form of government by holding the President and the

Executive Branch accountable to the laws and longstanding practices that have protected our

democracy through both Democratic and Republican administrations. As part of this mission,

Plaintiff seeks to inform public understanding of operations and activities of the government by

gathering and disseminating information that is likely to contribute significantly to the public

understanding of Executive Branch operations and activities. Plaintiff regularly requests such

information pursuant to FOIA. Plaintiff intends to give the public access to documents

transmitted via FOIA on its website, www.protectdemocracy.org, and to provide information

about and analysis of those documents as appropriate.

13.     Defendant, Department of Justice Civil Rights Division, is a department in the

Executive Branch of the United States government and is an agency as defined in 5 U.S.C. §

552(f)(1). CRT is located at 501 D Street NW, Washington, DC 20579. CRT has possession, custody, or control of the documents that Plaintiff seeks in response to its FOIA request.

## FACTUAL BACKGROUND AND ALLEGATIONS

14.     Politicization of the Census Bureau or the 2020 Census poses a grave danger to core democratic principles. Indeed, interfering with the proper collection and analysis of the data that forms the basis of our representative form of government, including by undermining the Census Bureau's ability to conduct an accurate survey, is a matter of extreme public concern. The public must be able to hold the Administration accountable to its responsibility to conduct a nonpartisan, accurate, and fair census. It is therefore critical to know whether there has been any political inference with the leadership or implementation of the 2020 Census.

### *Plaintiff's FOIA Request*

15.     On March 20, 2018, Plaintiff sent a FOIA request (the "FOIA Request") via FOIAonline to CRT requesting the following records for the period between October 1, 2017 and the date searches are conducted in response to the request:

1)  All records, including but not limited to emails, notes, and memoranda, reflecting communications between Department of Justice and the following individuals, or the Department of Justice and employees or representatives of the following entities, discussing or otherwise relating to the 2020 Census or the inclusion of a citizenship question in the 2020 Census.

   a.  Donald Trump for President (including but not limited to emails in which the domains donaldjtrump.com, trump.com, trumporg.com, ptt.gov, or donaldtrump.com are in the email address in the to, from, cc, bcc, subject, or body fields of the email)

b.   The Republican National Committee (including but not limited to emails in which the domains gop.com or RNCHQ.org are in the email address in the to, from, cc, bcc, subject, or body fields of the email)

c.   America First Action (including but not limited to emails in which the domain a1apac.org is in the email address in the to, from, cc, bcc, subject, or body fields of the email)

d.   Great America

e.   Future 45

f.   Brad Parscale

g.   Michael Glassner

h.   John Pence

i.   Steve Bannon

j.   Breitbart (including but not limited to emails in which the domain breitbart.com is in the email address in the to, from, cc, bcc, subject, or body fields of the email)

k.   Fox News (including but not limited to emails in which the domain foxnews.com is in the email address in the to, from, cc, bcc, subject, or body fields of the email)

2)   All communications, including but not limited to emails, notes, and memoranda, between the Department of Justice and the Executive Office of the President, reflecting, discussing, or otherwise relating to the determination of the questions for the 2020 Census, including but not limited to emails in which the domain eop.gov is in the email address in the to, from, cc, bcc, subject, or body fields of the email.

3)  All records, including but not limited to emails, notes, and memoranda, reflecting, discussing, or otherwise relating to communications between the Department of Justice and Thomas Brunell.

4)  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

See Exhibit A.

16.     In its FOIA Request, Plaintiff also requested a fee waiver from Defendant pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  See id.

17.     On March 30, 2018, Defendant sent Plaintiff acknowledgment of receipt of the FOIA Request on March 20, 2018, and noted that it had been recorded as request FOI/PA No. 18-00208-F. See Exhibit B.

### Defendant's Denial of the FOIA Request

18.     On May 31, 2018, 51 business days after Plaintiff submitted its FOIA Request and 41 business days after Defendant acknowledged receipt thereof, Defendant formally denied Plaintiff's FOIA Request ("Denial Letter"). See Exhibit C. Under 5 U.S.C. § 552(a)(6)(A)(i), Defendant had 20 business days to respond to Plaintiff's request unless unusual circumstances dictated a longer time period. Defendant did not cite any of the "unusual circumstances"

enumerated in 5 U.S.C. § 552(a)(6)(B)(iii) that would have allowed it to take 51 business days

without triggering possible action by Plaintiff.

19.     In denying Plaintiff's FOIA Request, Defendant claimed that "all responsive

records are exempt from disclosure pursuant to 5 U.S.C. §552(b)(7)(A) since disclosure thereof

could reasonably be expected to interfere with law enforcement proceedings regarding the

review of this issue [adding the citizenship question to the 2020 Census] by the Civil Rights

Division's Voting Section." *See id.* at 2. FOIA Exemption 7(A) is applicable to "records or

information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information . . . could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Defendant also stated it denied the request

because certain of the requested records are exempt from disclosure under 5 U.S.C. § 552(b)(5)

because they "consist of attorney work product, and pre-decisional deliberative material and

attorney client material." *See id.* FOIA Exemption 5 protects from disclosure "inter-agency or

intra-agency memorandums or letters that would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Defendant also provided the

following explanation in denying the FOIA Request: "You may resubmit your request once the

Justice Department has closed this matter, and we will be happy to provide you with any

documents that may be released which will not jeopardize the Department's currently active

enforcement interest in this matter." *Id.*

### Plaintiff's Appeal of the Denial Letter

20.     On July 11, 2018, Plaintiff appealed Defendant's decision to the Department of

Justice FOIA Appeals Officer. *See* Exhibit D. In its appeal, Plaintiff argued that FOIA

Exemption 7(A) does not apply to the records requested in its FOIA Request because: (1) the

requested records were not compiled for law enforcement purposes; (2) Defendant failed to

establish that disclosure of the requested information could reasonably be expected to interfere

with enforcement proceedings; and (3) the active litigation cited by Defendant in its Denial

Letter does not constitute an enforcement proceeding. *See id.* at 5-7. Plaintiff further argued that

FOIA Exemption 5 is inapplicable to the requested information because: (1) Exemption 5 does

not apply to communications with third parties; (2) Defendant conceded that responsive

information is not privileged by offering to produce documents "once the Justice Department has

closed this matter"; and (3) the requested documents include, among other things, third-party

communications not subject to the deliberative process privilege. *See id.* at 7-8.

21.     On July 25, 2018, Plaintiff received an acknowledgment of receipt of the appeal

from the Department of Justice's Office of Information Policy ("OIP"), which is responsible for

adjudicating Department of Justice FOIA appeals. Defendant assigned number DOJ-AP-2018-

007170 to this appeal.

### *Defendant's Denial of Plaintiff's Appeal*

22.     In a letter dated August 22, 2018 ("Appeal Denial"), OIP affirmed CRT's action

on Plaintiff's FOIA Request, basing its decision on partly modified grounds. *See* Exhibit E. OIP

issued its decision 30 business days after Plaintiff filed its appeal. Under 5 U.S.C. §

552(a)(6)(A)(ii), Defendant had 20 business days to respond to Plaintiff's appeal unless unusual

circumstances dictated a longer time period. Defendant did not cite any of the "unusual

circumstances" enumerated in 5 U.S.C. § 552(a)(6)(B)(iii) that would have allowed it to take 30

business days without triggering possible action by Plaintiff.

23.     OIP stated in its Appeal Denial that CRT properly withheld under 5 U.S.C. §

552(b)(7)(A) the information requested by Plaintiff in its FOIA Request and that "it is reasonably

foreseeable that disclosure of this information would harm the interests protected by this

provision." *See id.* at 1.  Although OIP asserted in a footnote that "Exemption 5 is highly likely

to encompass large swaths of the responsive records," OIP did not address or rule on CRT's

claim that Exemption 5 applies to the information requested by Plaintiff.

### *Defendant's Unlawful Reliance on Exemptions to Withhold Documents*

24.     Reliance by DOJ/CRT upon Exemption 7(A) is misplaced. Exemption 7(A) is

applicable to "records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information . . . could reasonably

be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). There are at

least three reasons Exemption 7(A) does not apply in this case.

25.     First, the government cannot demonstrate – as it is required to do under the first

prong of the Exemption 7(A) analysis – that the responsive documents were "compiled for law

enforcement purposes." 5 U.S.C. § 552(b)(7)(A). "Agency records are considered compiled for

law enforcement purposes . . . if the investigatory activity that gave rise to the documents is

related to the enforcement of federal laws, and there is a rational nexus between the investigation

at issue and the agency's law enforcement duties." *Stein v. U.S. Sec. & Exch. Comm'n*, 266 F.

Supp. 3d 326 (D.D.C. 2017) (internal quotations omitted) (quoting *Judicial Watch v. Rossotti*,

285 F. Supp. 2d 17, 24 (D.D.C. 2003)). In this case, the requested documents were not

"compiled" for law enforcement purposes. The FOIA Request does not seek any "compilations"

of documents that have been, or may have been, compiled by DOJ/CRT for investigatory

purposes. Rather, the requested records exist independently of, and were created prior to, the

litigations referenced in the Appeal Denial. *See* Exhibit D at 3 (citing *New York v. DOC*, 1:18-

cv-02921 (S.D.N.Y. filed Apr. 3, 2018); *California v. Ross*, 3:18-cv-01865 (N.D. Cal. filed Mar.

26, 2018); *Kravitz v. DOC*, 8:18-cv-01041 (D. Md. filed Apr. 11, 2018) [hereinafter *Kravitz* Complaint]). Moreover, the Department of Justice is not a party in any of those litigations, each of which was filed <u>after</u> Plaintiff submitted the FOIA Request.  The cited litigations are predicated upon action taken on March 26, 2018, when "U.S. Secretary of Commerce Wilbur L. Ross, Jr., ordered the U.S. Census Bureau . . . to add a question to the 2020 decennial census . . . questionnaire that requires respondents to report to the government whether they and their household members are United States citizens." *Kravitz* Complaint, at ¶ 1. Because the predicate act giving rise to these three cases did not occur until March 26, 2018, any "investigatory activity" relating to the three referenced cases could not have given rise to documents created prior to March 20, 2018.

26.     Second, even if it were the case that all of the documents responsive to the FOIA Request were "compiled for law enforcement" – which Defendant cannot demonstrate – there is no basis upon which to conclude that disclosure of the information contained in those documents "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The Denial Letter includes only a conclusory statement that "disclosure thereof could reasonably be expected to interfere with law enforcement proceedings regarding the review of this issue by the Civil Rights Division's Voting Section." Exhibit C at 2. That is insufficient to meet the requirements of Exemption 7(A). *See Bagwell v. U.S. Dep't of Justice*, 2018 WL 1440177 at *6 (D.D.C. Mar. 22, 2018) (finding that the agency failed to meet its burden under Exemption 7(A) where the agency provided "only a conclusory statement that interference would occur without any discussion of how it would occur"). Moreover, rather than providing categories of responsive information, the Denial Letter includes only one category – "all" – and makes no attempt to explain how the release of responsive information could

somehow harm the cited ongoing "law enforcement proceeding." *Id.* This too is insufficient to meet the requirements of Exemption 7(A). *See Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 58-59 (D.C. Cir. 2008).

27.    Finally, the three cases cited in the Denial Letter do not constitute "enforcement proceeding[s]" for the purposes of Exemption 7(A). The U.S. Court of Appeals for the District of Columbia has construed Exemption 7(A) to include "cases in which the agency has the initiative in bringing an enforcement action and those . . . in which it must be prepared to respond to a third party's challenge." *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). In this case, DOJ/CRT has not brought any enforcement proceeding and is not even a party to any of the three cases upon which the Denial Letter relies. DOJ/CRT's apparent position that the cited complaints constitute "enforcement proceedings" is inconsistent with the courts' interpretation of, and Congress's purpose in enacting, Exemption 7(A). The Denial Letter's statement that "[t]he Department of Justice is currently in active litigation regarding the Census issues" is manifestly insufficient to invoke Exemption 7(A).

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

28.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

29.    By the FOIA Request, Plaintiff properly requested records within the custody and control of Defendant.

30.    Defendant has no legal basis on which to withhold the records requested by Plaintiff in its FOIA Request.

31.    Plaintiff has exhausted the applicable administrative remedies with respect to its FOIA Request to Defendant.

32.     Defendant is in violation of FOIA by unlawfully withholding records responsive to Plaintiff's FOIA Request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)  Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's FOIA Request;

(2)  Order Defendant, by a date certain, to demonstrate that it has conducted an adequate search;

(3)  Order Defendant, by a date certain, to produce to Plaintiff any and all nonexempt records or portions of records responsive to Plaintiff's request, as well as a Vaughn Index of any records or portions of records withheld due to a claim of exemption;

(4)  Enjoin Defendant from improperly withholding records responsive to Plaintiff's FOIA Request;

(5)  Order Defendant to grant Plaintiff's request for a fee waiver;

(6)  Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7)  Grant Plaintiff such other relief as the Court deems appropriate.

Date: November 15, 2018

/s/ Dennis Lawson
Dennis Lawson
D.C. Bar No. 452402

DECHERT LLP
1900 K St., N.W.
Washington, D.C. 20006
(202) 261-3343
Dennis.Lawson@dechert.com